IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

MARQUIS B. WEST,

    Plaintiff,

v.                                                         CIVIL ACTION NO.: CV606-083

BRYAN HIGGINS; JENNIFER ZAK;
TAMARA BENNETT; KIMBERLY
BRAUDA; VIRGINIA SCOTT; JOE
SHYROCK; VIRGINIA HOGAN;
Ms. KITCHENS; Dr. SCOTT BALOGH;
Dr. ARIADI; Dr. DENTON; HUGH
SMITH, Warden; JOHN PAUL,
Warden, and STEVE ROBERTS,
Deputy Warden,

    Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently confined at Phillips State Prison in Buford, Georgia, has filed an action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement while incarcerated at Georgia State Prison in Reidsville, Georgia ("GSP"). Defendants have filed five separate motions for summary judgment, and Plaintiff has filed his own motion for summary judgment.[1] For the reasons which follow, Defendants' motions should be **GRANTED** and Plaintiff's motion should be **DENIED**.

---

[1] Defendants Bennett, Brauda, Scott, and Zak filed a motion for summary judgment on May 23, 2007 (Doc. No. 47). Defendants Hogan, Kitchens, Paul, Roberts, Shyrock, and Smith filed a motion for summary judgment on June 8, 2007 (Doc. No. 60). Defendants Ariadi and Balogh filed a motion for summary judgment on June 22, 2007 (Doc. No. 72). Defendant Denton filed a motion for summary judgment on September 21, 2007 (Doc. No. 91). Plaintiff filed a motion to dismiss pursuant to Rule 56(f) of the Federal Rules of Civil Procedure in response to these motions for summary judgment (Doc. No. 108), which was denied by Order of the Court dated December 6, 2007 (Doc. No. 117). Plaintiff filed no further response to these four motions for summary judgment. Defendant Higgins filed a motion for summary judgment on November 1, 2007 (Doc. No. 103), Plaintiff filed a Response on December 4, 2007 (Doc. No. 113), and also filed his own motion for summary judgment against Defendant Higgins on that date (Doc. No. 109).

## STATEMENT OF THE CASE

Plaintiff's claim is that Defendants Bennett, Brauda, Shyrock, Kitchens, Hogan, Scott, and Zak were part of a mental health treatment team at GSP that issued a decision to reduce his mental health status from Level III to Level II.[2] Plaintiff asserts that this action resulted in his being housed with access to razor blades with which he has repeatedly mutilated himself. Plaintiff contends that the mental health status reduction was made with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Plaintiff contends that Defendants Smith, Paul, and Roberts are liable for these actions as supervisors at GSP. Plaintiff asserts that Defendants Doctors Balogh and Ariadi refused to provide him with psychiatric treatment and prevent him from inflicting self-harm, also in violation of his Eighth Amendment rights, and that Defendant Denton has treated his mental illness at GSP despite not being properly licensed. Finally, Plaintiff alleges that Defendant Higgins violated his First Amendment rights by refusing him a hearing on his request for a housing change.

In their motions for summary judgment, Defendants contend that Plaintiff has established no genuine issue of material fact that they were deliberately indifferent to his serious medical needs. Rather, Defendants assert, Plaintiff demonstrates at most a difference of opinion as to the appropriate course of his mental health treatment, and

---

[2] A Level II mental health status means that the inmate: can be housed in the general population; is given outpatient-type care; sees a mental health counselor at least once per week or more if requested; and sees a psychiatrist once every four months if medicated. See SOP VG32-001. A Level III mental health status means that the inmate: is housed in a supportive living unit; has daily treatment from mental health counselors; and has frequent access to psychiatrists. Level IV and V inmates experience sudden severe psychological problems and are (usually temporarily) housed in the Acute Care Unit ("ACU") and in Crisis Stabilization Units ("CSU"). Since his transfer to GSP in May of 2004, Plaintiff has been classified at various mental health status levels and housed in various units. In February 2005 following a brief stay in the ACU for threats of self-harm, Plaintiff was returned to Level III status. On March 1, 2005, the treatment team reclassified Plaintiff as a Level II inmate. See Ariadi Aff., ¶¶ 17-20.

that as such, his Eighth Amendment claim must fail. Defendant Higgins asserts that Plaintiff's claim against her is barred by the Prison Litigation Reform Act ("PLRA").[3]

## STANDARD OF DETERMINATION

Summary judgment should be granted only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The procedure for disposing of a summary judgment motion is well established. The Court may grant summary judgment to a party when the evidence demonstrates that the nonmoving party has failed to establish an essential element of his case. The party moving for summary judgment bears the initial burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970). In applying this standard, a court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion. All reasonable doubts regarding the facts should be resolved in favor of the nonmovant. Adickes, 398 U.S. at 157, 90 S. Ct. at 1608.

Once the moving party has met this initial burden, the burden shifts to the opposing party to show that a genuine issue of material fact exists. Celotex Corp. v. Catrell, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The opposing party may not simply rest upon mere allegations or denials of the pleadings. Rather, the nonmoving party must make a sufficient showing of facts to establish the existence of an essential element to his case on which he will bear the burden of proof at trial. Id.; Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989). To oppose the motion sufficiently after the movant has met his initial burden, the nonmoving party must

---

[3] The various Defendants assert several other bases for summary judgment, none of which warrant discussion at length as Plaintiff's Eighth Amendment claim fails on its merits, and his claim against Defendant Higgins is unexhausted.

point to evidence in the record or present additional evidence in the form of affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure. Riley v. Newton, 94 F.3d 632, 639 (11th Cir. 1996). If the record presents factual issues, the Court must deny the motion and proceed to trial. Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1246 (11th Cir. 1999). Summary judgment is also inappropriate where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. Id.

## DISCUSSION AND CITATION OF AUTHORITY

### I. Eighth Amendment Analysis

Although the Constitution does not require "comfortable prisons," it also does not allow for inhumane prison conditions. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400, 69 L. Ed. 2d 59 (1981)). "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. Prison officials must provide humane conditions of confinement, including the provision of adequate food, clothing, shelter, and medical care. Farmer, 511 U.S. at 832, 114 S. Ct. at 1976.

The "cruel and unusual punishment" standard, which originally proscribed only barbarous methods of punishment, has evolved to reflect society's "standards of decency." Rhodes v. Chapman, 452 U.S. 337, 345-46, 101 S. Ct. 2392, 2398-2399, 69

L. Ed. 2d 59 (1981). In this context, the Court employs a two-part analysis to determine whether conditions of confinement violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). First, the condition must be objectively and sufficiently serious or extreme to show that it "pose[s] an unreasonable risk of serious damage to [a plaintiff's] future health or safety." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir.2004) (quoting Helling, 509 U.S. at 35, 113 S. Ct. at 2481). "Specifically, a prisoner must prove 'a serious medical need' or the denial of 'the minimal civilized measure of life's necessities.'" Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004) (quoting Chandler, 379 F.3d at 1289-90) (other citations omitted). Second, "the prisoner must prove that the prison official acted with 'deliberate indifference.'" Id. (quoting Farmer, 511 U.S. at 837, 114 S. Ct. at 1979). "To prove deliberate indifference, the prisoner must show that the defendant prison official 'acted with a sufficiently culpable state of mind' with regard to the prison condition or serious medical need in issue." Id. (quoting Chandler, 379 F.3d at 1289-90).

A.  **Mental Health Status Downgrade**

Plaintiff's Eighth Amendment claim as to the decision to downgrade his mental health status must fail.[4] Assuming that Plaintiff's mental condition constituted an objectively serious medical need, he ultimately has failed to offer evidence demonstrating that prison officials deliberately disregarded that need. Regarding the

---

[4] The Court notes that this is Plaintiff's second attempt to challenge the mental health status downgrade in question. In a prior § 1983 case filed with this Court, Plaintiff alleged an identical Eighth Amendment deliberate indifference claim based upon the March 1, 2005 determination, but against different defendants who participated in decision-making regarding his mental health care. See West v. Warnock, et al., Case Number CV605-047 (S.D. Ga. May 31, 2005). In that case, the Court granted summary judgment on the merits of the Eighth Amendment claim to the defendants, finding that Plaintiff produced no evidence that the prison officials knew of and disregarded an excessive risk to his health, and instead that "all indications are that Plaintiff has received constant care for his medical and psychiatric needs . . . ." CV605-047, Doc. No. 104, p. 10.

particular incident in question, Defendants have submitted reports detailing the mental health level reduction determination of March 1, 2005 and the medical and behavioral reasons therefor. (Doc. No. 48, Exh. E). Defendants have submitted their affidavits, in which those with knowledge of the decision in question assert that Plaintiff's mental health level was reduced based upon an evaluation of his medical history and mental status, and that his mental health level was appropriate for his condition at all given times. (Doc. No. 48, Exhs. A, B, C, D; Doc. No. 62, Exhs. A, B). The affidavits of the treatment team indicate that both preceding and subsequent to the March 1 decision, Plaintiff was closely monitored and was treated and evaluated after incidents of attempted self-harm. It is and was Defendants' impressions that Plaintiff's self-injurious behavior was an attempt to manipulate his way to different treatment and housing assignments, and that allowing such manipulation would be detrimental to his condition.

Conversely, Plaintiff has offered nothing indicating that his treatment was even incorrect or unreasonable, much less that Defendants knew that the treatment was inadequate and disregarded that knowledge. What is required to establish deliberate indifference is more than mere negligence. Though negligent acts or omissions "might well be something society wishes to discourage . . . an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994). Instead, liability may only result from the prison officials' *deliberate* disregard of a risk. Though Plaintiff may have naturally desired different housing or a different course of treatment, such a difference of opinion with medical personnel is insufficient to support

AO 72A
(Rev. 8/82)

6

an Eighth Amendment deliberate indifference claim. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). Because there is no evidence from which a reasonable jury could conclude that the March 1 mental health status determination constituted deliberate indifference to Plaintiff's serious medical needs, Defendants Zak, Bennett, Brauda, Scott, Shyrock, Hogan, Kitchens, Smith, Paul, and Roberts are entitled to summary judgment on this claim.

### B. Alleged Refusal to Provide Psychiatric Treatment

Plaintiff asserts that Defendants Doctors Balogh and Ariadi have "refused to provide psychiatric treatment for [his mental health] illness of self-harm," and that they "allow [him] to mutilate his body with razors" despite knowledge that he will do so. (Doc. No. 1, pp. 2-3).[5] Again, assuming that Plaintiff's condition is an objectively serious medical need, he has failed to offer evidence of anything other than a simple difference of opinion with the physicians as to the appropriate course of his treatment.

Defendants' affidavits indicate that neither of them at any time refused mental health care to Plaintiff, and that, conversely, they met with him, prescribed medication, and ordered admissions to more intensive care housing on several occasions when he attempted self-harm. (Doc. No. 75, Exhs. A, B). Defendants indicated several instances in which Plaintiff was treated after having cut himself, and that Plaintiff's attempts at self-harm were "suicidal gestures designed to manipulate the system to get what he wanted," and that successful manipulation would have been detrimental to his condition. (Doc. No. 75, Exh. A). Plaintiff has offered nothing showing that these psychiatrists deliberately refused to treat him on any occasion, or even that they ever

---

[5] Defendants Ariadi and Balogh maintain, and Plaintiff does not dispute, that they were not involved in the March 1, 2005 decision to reclassify Plaintiff's mental health level.

provided him with inadequate treatment. Once again, Plaintiff's complaint instead appears to be that he should have been treated *differently*. Plaintiff has offered no evidence in response to Defendants' motion, and accordingly, Defendants are entitled to summary judgment on this claim as well.

### C. Defendant Doctor Denton

Plaintiff's Complaint alleges that Defendant Dr. Denton on one occasion discharged him from the Crisis Stabilization Unit ("CSU") and prescribed medication and treatment despite not being a licensed psychiatric professional. (Doc. No. 1, p. 3). Plaintiff asserts that this was in violation of GSP regulations. Plaintiff appears to assert that this action was also taken with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Though Plaintiff and Defendant disagree as to whether Defendant was licensed at the time she provided his treatment,[6] even assuming that she was not, the court does not interpret an SOP violation as conclusive evidence that Defendant acted with deliberate indifference.

Plaintiff has offered nothing on the actual deliberate indifference inquiry aside from his blanket allegation that Denton's participation in his discharge from heightened care resulted in his self-harm. Once again, Defendant has come forth with her affidavit detailing her treatment of Plaintiff during the incident in question and beyond. (Doc. No. 92, Exh. A). Defendant avers that she prescribed medications based upon Plaintiff's clinical presentation and symptoms, and that she altered his medicinal treatment based upon his own refusal to comply with initial prescriptions. Plaintiff's medical records confirm these details: Dr. Denton's notes indicate that Plaintiff "refused all 4 meds in

---

[6] Defendant Denton asserts that she has held an unrestricted license to practice psychiatry in the State of Georgia since 1997. (Doc. No. 92, Exh. A, p. 10).

past few [days]" and that she would discontinue one prescription and reduce the dosage of another "in order to try to gain some compliance [with] meds." (Doc. No. 92, Exh. 1). Furthermore, Defendant maintains that the decision to not house Plaintiff in the Behavioral Treatment Unit ("BTU") was based upon her professional opinion that allowing him to manipulate and control his housing assignment as he demanded would be detrimental to his mental health condition. (Doc. No. 92, Exh. A, p. 9). Plaintiff, in turn, has presented no evidence creating any question of fact as to the requisite subjective mental component of a deliberate indifference claim against Defendant Denton. As such, Denton is entitled to summary judgment.

### D. Defendant Higgins

Finally, Plaintiff contends that Defendant Higgins denied him a hearing regarding his desire to be housed in the BTU, and that the denial was in retaliation for his having sued her in the past. (Doc. No. 1, p. 3). Plaintiff asserts that Defendant used her new position as mental health director to take these actions. (Id.).

In her motion for summary judgment, Defendant Higgins first contends that Plaintiff has failed to exhaust his administrative remedies on this claim as is required by the PLRA. Defendant asserts that Plaintiff has not followed the Georgia Department of Corrections' required grievance process concerning his claim that Defendant retaliated against him by denying a due process hearing. In response, Plaintiff asserts that it is enough to satisfy the PLRA exhaustion requirement that he placed prison officials on notice of his problem. (Doc. No. 113, p. 7). Plaintiff points to two letters he wrote to Defendant Higgins requesting assignment to the BTU and a hearing to determine the appropriateness of his placement there. (Doc. No. 1, Exh. 4(a), Exh. 4(b)). Plaintiff also

submitted two "memo notices" that he allegedly gave to Dr. Balogh, Dr. Ariadi, several of the mental health counselors, and Wardens Smith, Paul, and Roberts, complaining, among other things, that he had been denied BTU housing and a hearing.

Section 1997e(a) of the PLRA provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002), the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Id. at 523, 122 S. Ct. at 987. Thus, even where the prisoner is seeking relief not provided for under the grievance procedure, exhaustion is still a prerequisite to his filing suit. Id. at 524, 122 S. Ct. at 988; Booth v. Churner, 532 U.S. 731, 732, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001).

The Georgia Department of Corrections has an established statewide grievance procedure, which requires that inmates complete a formal grievance, followed by an appeal. Standard Operating Procedure IIB05-0001.[7] Plaintiff contends that Defendants were aware of his complaints because he sent them letters and memos detailing his desire to be transferred to BTU and to obtain a hearing. However, the grievance procedures at GSP do not provide for inmates to remedy their complaints by writing letters or memos. Regardless of any notice to prison officials, it is an institution's requirements which define what is considered proper exhaustion. Jones v. Bock, ___

---

[7] Despite Defendant's failure to file the relevant provisions of the SOP, the Court may take judicial notice of SOP IIB05-0001. This provision details the administrative remedy procedure applicable to Georgia Department of Corrections facilities, and has been submitted to the Court on numerous occasions in the past. See e.g., Harris v. Hall, CV506-068, Doc. No. 27-1, pp. 5-25 (S.D. Ga. March 23, 2007); United States v. Rey, 811 F.2d 1453, 1457 n.5 ("A court may take judicial notice of its own records and the records of inferior courts.").

U.S. ___, 127 S. Ct. 910, 923, 166 L. Ed. 2d 798 (2007). It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The Court's focus here is on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id. Plaintiff has failed to provide evidence of any grievances filed in accordance with procedure relating to the instant allegations against Defendant Higgins. Accordingly, because he has failed to establish the existence of a genuine issue of material fact in response to Defendant's assertion that he failed to exhaust his administrative remedies, summary judgment in Defendant Higgins' favor is appropriate. Plaintiff's motion for summary judgment against Higgins, in which he argues the merits of his claim against her, should be denied.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' motions for summary judgment (Doc. Nos. 47, 60, 72, 91, and 103) be **GRANTED**, and that Plaintiff's motion for summary judgment be **DENIED**. Plaintiff's claims against Defendant Higgins should be dismissed without prejudice, as Plaintiff has not exhausted his administrative remedies on that claim. Plaintiff's pending Motion to Revise Incomplete Order of 10/18/2007 (Doc. No. 107) should also be **DENIED** as moot.

So **REPORTED** and **RECOMMENDED** this 21st day of December, 2007.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE